NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1064

FURNACE BROOK, LLC,

Plaintiff-Appellant,

v.

OVERSTOCK.COM, INC.,

Defendant-Appellee.

George C. Summerfield, Stadheim & Grear, Ltd., of Chicago, Illinois, argued for plaintiff-appellant.  With him on the brief were Joseph A. Grear, Rolf O. Stadheim, and Keith A. Vogt.

John H. Barr, Jr., Bracewell & Giuliani LLP, of Houston, Texas, argued for defendant-appellee.  With him on the brief were Warren W. Harris and John F. Luman, III.

Appealed from: United States District Court for the Southern District of New York

Judge Charles L. Brieant

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1064

FURNACE BROOK LLC,

Plaintiff-Appellant,

v.

OVERSTOCK.COM, INC.,

Defendant-Appellee.

_____

DECIDED: May 23, 2007

_____

Before MAYER, Circuit Judge, CLEVENGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

Appellant Furnace Brook LLC seeks review of the final judgment of the United States District Court for the Southern District of New York, in Docket No. 05 Civ. 7329, granting summary judgment of noninfringement to appellee Overstock.com, Inc. The district court held that the "telephone terminal" and "customer terminal means" limitations of claims 1 and 5 of the asserted patent, U.S. Patent No. 5,721,832 ("the '832 patent"), do not read on the accused structures—personal computers and cellular telephones to the extent they access Overstock's website over the Internet. We affirm.

1. With respect to claim 1, Furnace Brook argues that the "telephone terminal" referred to in one of the limitations may be a cellular telephone or a personal computer.

We agree with Furnace Brook insofar as it suggests that a "telephone terminal" refers to a device for communicating over a telephone network: a cellular telephone and a personal computer are capable of such communication, and to the extent that they are used to do so, either device can constitute a "telephone terminal." But telephone communication, as discussed in the patent, requires more than just communication over a telephone line. It requires a dial-up connection to the catalog server at the other end of the connection. The specification states that the telephone terminal "dial[s] a predetermined assigned telephone number" used by catalog companies to permit customers to make calls "to their business." '832 patent, col. 3, ll. 1–5. According to the specification, the act of making that telephone call "connects the customer" to the catalog server. Id., col. 3, l. 6. The specification later confirms that requirement, stating that "a telephone call to a predetermined number, e.g. an 800 number" is "recei[ved] by the central data processor of applicants' improved catalog system." Id., col. 8, ll. 3–8.

Thus, the claim 1 limitation reciting the establishment of a "selective communication link initiated by a user between said user's telephone terminal and said computer system" requires that the communication link be established over a telephone network by dialing the computer system directly. Although a personal computer and a cellular telephone are capable of performing that function, those devices must actually be performing that function in order to be "telephone terminals," as that term is used in the '832 patent. The record contains no evidence that the personal computers or cellular telephones of Overstock's customers place such a call when accessing Overstock's website over the Internet. The district court was therefore correct to hold that those devices fall outside the literal scope of the claim 1 limitation.

Furnace Brook notes that the specification discloses an embodiment in which a "terminal" communicates with a catalog server using an "interactive media contact," of which mail, fax, and telephone are given as examples. '832 patent, col. 9, ll. 37–39. Furnace Brook argues that the Internet is a form of interactive media contact and therefore that communications over the Internet do not fall outside the literal scope of claim 1. Even if we assume that the Internet is a form of interactive media contact, Furnace Brook's argument fails because the portion of the specification to which Furnace Brook refers discusses a "terminal" without any further elaboration, whereas claim 1 recites a "telephone terminal." The modifier "telephone" must add some limitation to the noun "terminal" for the modifier to have any meaning. As explained, the specification tells us what telephone communication requires for purposes of the patent. Thus, we reject Furnace Brook's assertion that any embodiment described as a "terminal" in the specification must be a "telephone terminal" within the meaning of claim 1.

Next, Furnace Brook argues that the accused devices, when used to access the Internet, are captured by the doctrine of equivalents, even if they are not within the literal scope of claim 1. The question of infringement under the doctrine of equivalents is a factual question, however, and Furnace Brook has not introduced evidence sufficient to create a genuine issue of material fact as to that question. In its summary judgment briefing, Furnace Brook pointed to the declaration of Dr. Robert Stevenson and the deposition testimony of Dr. Richard Nemes in an effort to show equivalence. Yet none of the facts stated in those sources are material to the equivalents issue before us. Although Dr. Stevenson stated that a personal computer and a cellular

telephone can perform the same functions as a standard telephone set, and that those devices can also access the Internet, he did not explain why accessing a computer server over the Internet is equivalent to dialing a computer server over a telephone network. The deposition testimony of Dr. Richard Nemes suffers from the same flaw. Without record evidence to create a genuine factual dispute on the equivalents issue, the district court properly granted summary judgment that Overstock does not infringe claim 1.

2. With respect to claim 5, the critical limitation recites a "customer terminal means" that activates a communication means to connect with a central data processing means. '832 patent, col. 11, ll. 39–43. Because the customer terminal means limitation uses the term "means" and because the phrase "customer terminal" identifies no significant structure, the district court correctly interpreted the limitation as a means-plus-function limitation in accordance with 35 U.S.C. § 112, ¶ 6. The district court identified two means disclosed in the specification for performing the claimed function: a "standard landline telephone unit" and a "touchtone telephone" connected to a television for displaying catalog data. Furnace Brook asserts that the district court ignored as a disclosed means a device communicating over an "online interactive communications network" (shown in figure 4 of the patent), which Furnace Brook defines as a device in "connection to, or communication with, a computer." The label "online interactive communications network," however, identifies no specific structure for performing the claimed function; it describes only a generic class of structures and was thus properly ignored. See Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1551–52 (Fed. Cir. 1997) (holding that the disclosed wave forms for performing a claimed

function included a wave form specifically identified in the specification but did not include the nonspecific set of "other wave forms" mentioned only generically in the specification as suitable for performing the claimed function).

Furnace Brook also faults the district court for not stating that the literal scope of the critical limitation includes equivalents of the disclosed means. According to Furnace Brook, those equivalents include Internet-enabled cellular telephones and personal computers. The district court, however, stated in its claim construction order that the scope of a means-plus-function limitation "is . . . limited to the structures disclosed in the specification, and their equivalents," which indicates that the court understood the requirements of section 112, paragraph 6. The district court then addressed the issue of equivalent means at the summary judgment stage, holding that "no reasonable juror could find an insubstantial difference between the '[c]ustomer [t]erminal [m]eans' disclosed in the '832 patent" and an Internet-enabled cellular telephone or personal computer. As explained above in connection with claim 1, that ruling is correct. Dr. Stevenson's declaration and Dr. Nemes's deposition testimony do not address the equivalence of communication with a server over the Internet and communication with a server by dialing the server over telephone networks. Furnace Brook offered no other evidence of equivalence. Furthermore, Furnace Brook proffered no evidence that the Internet is an after-arising technology that could be within the reach of the doctrine of equivalents as applied to the disputed means-plus-function limitation. See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1310–11 (Fed. Cir. 1998). Because Furnace Brook's evidence of equivalence was insufficient to survive summary judgment, we uphold the judgment of noninfringement as to claim 5.