NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FURNACE BROOK LLC,**
*Plaintiff-Appellant,*

v.

**AEROPOSTALE, INC., DICK'S SPORTING GOODS, INC.,**
AND **LEVI STRAUSS & COMPANY,**
*Defendants-Appellees,*

**and**

**BOSTON PROPER, INC.,**
*Defendant-Appellee,*

**and**

**NIKE, INC.,**
*Defendant-Appellee,*

**and**

**HICKORY FARMS, INC.,**
*Defendant-Appellee,*

**and**

**THOMASVILLE FURNITURE INDUSTRIES, INC.,**
*Defendant-Appellee.*

---

2011-1025

---

Appeal from the United States District Court for the Northern District of Illinois in case No. 09-CV-4310, Judge Virginia M. Kendall.

---

Decided: July 22, 2011

---

GEORGE C. SUMMERFIELD, Stadheim & Grear Ltd, of Chicago, Illinois, argued for plaintiff-appellant.  With him on the brief were ROLF O. STADHEIM, JOSEPH A. GREAR, KEITH A. VOGT and STEVEN R. PEDERSEN.

R. DAVID DONOGHUE, Holland & Knight LLP, of Chicago, Illinois, argued for all defendants-appellees.  With him on the brief for defendants-appellee Boston Proper was MICHAEL GRILL.  On the brief for defendant-appellees Aeropostale, Inc., et al, were SCOTT J. BORNSTEIN and JAMES J. DECARLO, Greenberg Traurug, LLP, of New York, New York; and for defendant-appellee Nike, Inc., CHRISTOPHER J. RENK, AUDRA C. EIDEM HEINZE and TIMOTHY C. MEECE, Banner & Witcofe, Ltd, of Chicago, Illinois; and for defendant-appellee Hickory Farms, Inc., BURTON S. EHRLICH and JOHN P. LUTHER, Ladas & Parry, of Chicago, Illinois; and for defendant appellee, Thomasville Furniture Industries, Inc., GEORGE PAZUNIAK, RatnerPrestia,  of Wilmington, Delaware.

---

Before BRYSON, MOORE, and O'MALLEY, *Circuit Judges*

Opinion for the court filed by *Circuit Judge* MOORE.
*Circuit Judge* O'MALLEY dissents.

MOORE, *Circuit Judge*

Furnace Brook LLC (Furnace Brook) appeals the district court's grant of summary judgment that collateral estoppel prevents it from asserting the claims of U.S. Patent No. 5,721,832 ('832 patent) against Aeropostale, Inc., et al. (Defendants) in this case. Because our prior decision held that accessing a catalog website over the Internet using a computer or cellular phone does not meet the "telephone terminal" limitation present in the asserted claims, we *affirm*.

## BACKGROUND

This is not the first time Furnace Brook has appealed a decision involving the '832 patent to our court. In a prior litigation, Furnace Brook sued Overstock.com for infringing claims of the '832 patent. *Furnace Brook LLC v. Overstock.com, Inc.*, 230 F. App'x 984, 986 (Fed. Cir. 2007) (*Overstock*). In *Overstock*, as in the present litigation, Furnace Brook accused websites accessed over the Internet by computers and cellular phones of infringing the '832 patent. *Id.* The district court in *Overstock* granted summary judgment of noninfringement because, *inter alia*, the "telephone terminal" limitation, present in claim 1 (and dependent claims 2-4 asserted in this suit), was not met by the accused products. *Id.*

In the *Overstock* appeal, Furnace Brook argued that the district court erroneously limited the construction of the term "telephone terminal" to exclude personal computers and cellular phones. We agreed with Furnace Brook that the claimed "telephone terminal" could theoretically include a personal computer or cellular phone, since these devices "are capable" of "communicating over a telephone network." *Id.* We explained, however, that a "telephone terminal" also "requires a dial-up connection to the catalog server at the other end of the connection." *Id.*

As a result, we held that the telephone terminal limitation, as used in the claim, "requires that the communication link be established over a telephone network by dialing the computer system directly." *Id.* at 987.

We agreed that simply accessing a website on the Internet—without actually dialing a computer system directly—does not meet the "telephone terminal" limitation. *Id.* We held that "[t]he district court was therefore correct to hold that those [accused] devices fall outside the literal scope of the claim 1 limitation." *Id.* Furnace Brook also argued "that the accused devices, when used to access the Internet, are captured by the doctrine of equivalents, even if they are not within the literal scope of claim 1." *Id.* We noted, however, that Furnace Brook's evidence "did not explain why accessing a computer server over the Internet is equivalent to dialing a computer server over a telephone network." *Id.* As a result, we held the evidence was insufficient "to create a genuine issue of material fact as to that question" of infringement. *Id.*

Undeterred by the unfavorable outcome in *Overstock*, Furnace Brook asserted the '832 patent against Defendants in this case, again espousing a theory that Defendants' online ordering sites infringe claim 1 of the '832 patent. Furnace Brook also asserted claims 2-4 of the '832 patent, all of which depend on claim 1. Of particular importance for this litigation, each of the asserted claims requires the use of a "telephone terminal." The relevant portion of claim 1 is reproduced below (emphasis added):

> 1. An improved interactive computerized catalog process comprising the steps of:
>
> * * *
>
> generating a menu of catalog products and services comprising catalog data available for selec-

tive viewing at any user's telephone associated terminal screen,

establishing a selective communication link initiated by a user between said user's *telephone terminal* and said computer system,

* * *

The parties brought cross-motions for summary judgment on whether our decision in *Overstock* barred Furnace Brook from relitigating the issue of whether online ordering sites accessed through the Internet infringed the '832 patent. After analyzing the Seventh Circuit's collateral estoppel law, the district court noted that "the parties agree that the issue in both [*Overstock* and this] case[] is whether the accused ordering systems meet the 'telephone terminal' limitation in claim 1 . . . ." J.A. 8. Furnace Brook, however, argued that collateral estoppel did not bar its present claims because it believed our holding of noninfringement in *Overstock* was based on a construction of the "selective communication link" limitation, which it claims was not previously litigated.

The district court, after considering our prior holding in *Overstock*, concluded that our determination of noninfringement in that case was based on the "telephone terminal" limitation. It explained that "Furnace Brook admits that the limitation 'telephone terminal' was actually litigated before the Federal Circuit." J.A. 10. The district court also "found that the Federal Circuit's construction of 'telephone terminal' and its determination that the accused online ordering system did not satisfy that claim limitation either literally or under the doctrine of equivalents was essential to its decision [in *Overstock*]." *Id.* The court noted that "Furnace Brook does not suggest that the online ordering websites in this [instant] case are materially different from the websites at issue in *Over-*

*stock.com*." *Id.* In light of its findings and Furnace Brook's concessions, the district court held that Furnace Brook was barred from relitigating the issue of whether accessing a website catalog through the Internet using a cellular phone or personal computer met the "telephone terminal" limitation in the present litigation.

Furnace Brook appeals the district court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295.

## DISCUSSION

We apply the law of the regional circuit when reviewing a district court's application of collateral estoppel. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1359-60 (Fed. Cir. 2006). "Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost." *Ferrell v. Pierce*, 785 F.2d 1372, 1384 (7th Cir. 1986). In the Seventh Circuit, collateral estoppel requires four elements: "'1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.'" *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905-06 (7th Cir. 1990) (quoting *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987)). "In determining whether an issue has been litigated in an earlier case, a full trial on the merits in the earlier action is not an absolute prerequisite." *Id.* at 906. "We review a trial court's application of issue preclusion, also known as collateral estoppel, *de novo*." *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003); *see also United States v. Thyfault*, 579 F.3d 748,

750 (7th Cir. 2009) (determinations of issue preclusion reviewed de novo).

Furnace Brook is not appealing the lower court's determination that if our decision in *Overstock* was indeed based on the "telephone terminal" limitation, it is estopped from relitigating the issue of whether a catalog website accessed over the Internet meets the "telephone terminal" limitation. In fact, Furnace Brook expressly admitted that in *Overstock* it had the opportunity to address the issue of the construction of "telephone terminal" and whether that limitation was "satisfied literally or under the doctrine of equivalents" by the accused websites. J.A. 129. Furnace Brook also admits that it "actually litigated" both the construction and infringement of the "telephone terminal" limitation in *Overstock*, and that it had the chance to submit "substantial evidence" of equivalence in that case. *Id.* Finally, Furnace Brook admits it was fully represented in *Overstock* and that the websites in this case are not materially different from the website in *Overstock*. J.A. 10, 129.

Furnace Brook, however, disputes that our prior holding of noninfringement in *Overstock* was based on the "telephone terminal" limitation. Instead, it argues that our prior holding of noninfringement was based on a sua sponte construction of the "selective communication link" limitation. In fact, Furnace Brook explains that "[t]he *sole dispute* in this appeal is whether this Court affirmed the district court's summary judgment of noninfringement based upon the absence of the *'telephone terminal' limitation (which had been fully litigated)*, or upon the absence of the 'selective communication link' limitation (which had not)." Appellant Reply Br. at 1 (emphasis added). Furnace Brook claims that because "it had not had an opportunity to litigate the 'selective communication link' limitation in the *Overstock* matter, as a

matter of law, it cannot be collaterally estopped from now asserting infringement against the Appellees." *Id.*

We disagree with Furnace Brook's reading of *Overstock*. Although we noted that claim 1 requires establishing a "selective communication link," *Overstock*, 230 F. App'x at 987, our holding in that case was not based on the "selective communication link" limitation. Instead, we explained that, in order to actually function as the claimed "telephone terminal," a personal computer or cellular telephone must actually dial up the catalog computer system directly. *Id.* While we disagreed with categorically excluding personal computers and cellular phones from the "telephone terminal" limitation, we ultimately agreed with the district court that personal computers and cellular phones that access a catalog over the Internet fall outside the scope of the "telephone terminal" limitation. *Id.* We affirmed the holding of noninfringement because the record on appeal "contain[ed] no evidence that the personal computers or cellular telephones of Overstock's customers place such a [direct] call when accessing Overstock's website over the Internet." *Id.*

In coming to this conclusion in *Overstock*, we expressly rejected Furnace Brook's arguments "that any embodiment described as a 'terminal' in the specification must be a 'telephone terminal' within the meaning of claim 1." *Id.* We held that even if a computer had the capability to act as a telephone terminal in certain circumstances, a computer accessing a website over the Internet was not a "telephone terminal" as that term was used in the claim. Contrary to Furnace Brook's arguments in this case, the holding of noninfringement in *Overstock* was based on the "telephone terminal" limitation and was therefore essential to our decision in that case.

Furnace Brook had every incentive to present evidence supporting its position that the accused products in *Overstock* met the "telephone terminal" limitation. Moreover, Furnace Brook admits it had "sufficient opportunity to address—and did in fact address . . . whether those limitations were satisfied literally or under the doctrine of equivalents." J.A. 129. In *Overstock*, we held that Furnace Brook's evidence "did not explain why accessing a computer server over the Internet is equivalent to dialing a computer server over a telephone network." *Overstock*, 230 F. App'x at 987. While Furnace Brook claims it could not have anticipated the need to present this kind of equivalence evidence in *Overstock*, we believe it had a full and fair opportunity to litigate the issue of infringement of the "telephone terminal" limitation.

The dissent argues that an earlier panel of this court erred when it affirmed the summary judgment of no infringement. The dissent believes that panel should have vacated and remanded. We see no error in the district court's conclusion that the issues presented here were actually litigated in the prior case. We cannot refuse to apply collateral estoppel because we disagree with the earlier decision. Earlier decisions of this court are binding upon later panels. *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988).

We already decided that personal computers and cellular phones do not meet the "telephone terminal" limitation, and there is nothing unjust about preventing Furnace Brook from relitigating the same issue previously decided in *Overstock*. As a result, the district court did not err in holding collateral estoppel prevented Furnace Brook from relitigating the issue of infringement in this case. We have considered Furnace Brook's additional arguments on appeal and find them to be without merit.

## **AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FURNACE BROOK LLC,**

*Plaintiff-Appellant,*

v.

**AEROPOSTALE, INC., DICK'S SPORTING GOODS, INC.,**
AND **LEVI STRAUSS & COMPANY,**

*Defendants-Appellees,*

**and**

**BOSTON PROPER, INC.,**

*Defendant-Appellee,*

**and**

**NIKE, INC.,**

*Defendant-Appellee,*

**and**

**HICKORY FARMS, INC.,**

*Defendant-Appellee,*

**and**

**THOMASVILLE FURNITURE INDUSTRIES, INC.,**

*Defendant-Appellee.*

---

2011-1025

---

Appeal from the United States District Court for the Northern District of Illinois in case No. 09-CV-4310, Judge Virginia M. Kendall.

———————————

O'MALLEY, *Circuit Judge*, dissenting.

It is common for this court to change on appeal the claim construction that defines the metes and bounds of the patent claims at issue and ultimately controls infringement determinations in a case. It is also common, thankfully less so, for this court to reassess infringement in light of the new claim construction based only on the record developed under the, now discarded, construction employed by the district court.

This latter practice is sometimes appropriate and, in certain circumstances, works no unfairness to the litigants. For example, a remand is likely unnecessary and inefficient where a careful examination of the record reveals that: (1) it was fully developed with the possibility of this court's alternative construction in mind; (2) all parties had full incentive to, and no restrictions upon, their ability to develop the factual and legal record on all relevant alternatives; and (3) the trier of fact has had the opportunity to make all relevant and necessary factual findings. In such circumstances, this court can rest assured that the record it faces is the one the parties would have presented had they known what this court's claim construction would be and that an application of new guiding principles to that record works no unfairness.

Where the record is not so well-developed, however, the failure to remand for further development deprives the parties of the ability to fully and fairly litigate the issues presented. Where, as here, the record was limited by the narrowness of the trial court's claim construction,

and was further narrowed by the summary procedural posture in which the issues were presented and resolved, and where the trial court did not resolve all issues presented to it, this court should remand after revising the governing claim construction.  Only by doing so in such circumstances can we be sure that we have not deprived the parties of the right to fully and fairly litigate their disputes.

Because the panel in *Furnace Brook, LLC v. Overstock.com, Inc.*, 230 F. App'x 984 (Fed. Cir. 2007) did not remand that action after altering the controlling and critical claim construction, but should have, and because the majority in *this* case fails to recognize the impact of that earlier failure on the estoppel principles we are to now apply, I must respectfully dissent.[1]

### BACKGROUND

The majority does not undertake a careful analysis of the record in *Overstock* before reaching its conclusion that what occurred there should ban further litigation by Furnace Brook on the '832 patent in this case.  Instead,

---

[1] The majority discounts the concerns expressed here by characterizing them as a refusal to be bound by prior panel opinions.  Maj. Op. at 8–9.  That response fundamentally misunderstands both the point of this dissent and the important doctrine of collateral estoppel we are to apply here.  I do not seek to revisit or revise what we did in *Overstock*.  I simply suggest that we recognize the reality of what occurred and acknowledge that, given the record in that case — both at the trial level and on appeal — Furnace Brook was deprived of a full and fair opportunity to actually litigate the issues it seeks to litigate in this case.  Furnace Brook does not ask that we alter the claim construction we adopted in *Overstock*; it only asks for the opportunity to litigate — for the first time — the question of infringement in the face of that construction.

the majority relies on what it characterizes as Furnace Brook's own concessions to define and delimit the issues it describes as having been litigated in *Overstock*. By considering Furnace Brook's concessions out of the context of the record of those earlier proceedings, however, the majority both overstates the scope and import of those concessions and ignores the extent to which the record is inconsistent with the majority's characterization of it. A careful examination of the prior litigation must be the starting point for any res judicata inquiry, however. *See County of Cook v. Midcon Corp.*, 773 F.2d 892, 900 (7th Cir. 1985) ("[T]he central inquiry is whether the same question raised in a subsequent suit was actually litigated and decided in the prior suit, which turns on the determination whether the issue was properly placed in dispute and was resolved by the trier of fact.").

In the previous litigation, Furnace Brook alleged that Overstock infringed the '832 patent. The district court construed the term "telephone terminal" narrowly, finding it only meant a "standard telephone landline unit, which has a standard commercial handset, a touchtone pad, a display unit and an audio unit, which may have a cordless handset."[2] *Furnace Brook LLC v. Overstock.com, Inc.*, 2006 WL 3078905 at *1 (S.D.N.Y. Oct. 26, 2006), *aff'd*, 230 F. App'x 984 (Fed. Cir. 2007). The district court held, moreover, that computers and cellular telephones are not telephone terminals. *Id.*

As a separate limitation, the court also construed the term "selective communication link." Construing this term, the court stated that "it is evident that the selective communications link is the telephone line connection

---

[2] As the majority notes, the term telephone terminal is present in claim 1 and dependent claims 2–4 in the '832 patent

established between the user's terminal and the retailer-end computer," and the term refers "to a dial-up connection through a telephone exchange or a private branch exchange to a telephone network." *Furnace Brook LLC v. Overstock.com, Inc.*, No. 05-civ-7329, 2006 WL 2792692, at *7 (S.D.N.Y. Sept. 23, 2009) (Markman hearing order).

After claim construction, Overstock moved for summary judgment of non-infringement of claims 1 and 5 of the '832 patent. *Overstock*, 2006 WL 3078905 at *1. For purposes of the present appeal, Overstock's arguments with respect to claim 5 are not relevant. With respect to claim 1, Overstock asserted that (1) its website did not literally infringe under the district court's construction because it did not employ a "standard telephone landline unit"; (2) prosecution history estoppel prevented Furnace Brook from asserting that a computer was an equivalent of "standard landline unit"; and (3) cellular telephones could not be considered equivalents of "standard landline units" because they existed at the time the patent was drafted and were not mentioned in the patent. Overstock's Mot. Summ. J., No. 05-civ-7329 Doc. 139 at 3, 5–6, 9.

In response to this motion, Furnace Brook conceded that the district court's construction of telephone terminal prevented it from proving literal infringement. *Overstock*, 2006 WL 3078905 at *6. Furnace Brook argued, however, that prosecution history did not bar it from establishing infringement under the doctrine of equivalents. *Id.* Specifically, Furnace Brook argued that it was not barred from asserting that both cellular telephones and dial-up computer connections were equivalents of the land line described in the district court's construction. Furnace Brook's Op. Mot. Summ. J., No. 05-civ-7329 Doc. 149 at 8-12. Despite Furnace Brook's arguments, the district court held that "prosecution history prevents Furnace Brook

from arguing that a computer is encompassed under telephone terminal under the doctrine of equivalents." *Overstock*, 2006 WL 3078905 at *9. While the district court did not even address the equivalence of cellular telephones, it still granted Overstock's motion for summary judgment in its entirety with respect to claim 1. *Overstock*, 2006 WL 3078905 at *3.

On appeal, we agreed with Furnace Brook that the district court's claim construction was too narrow and that a personal computer or cellular telephone could be a "telephone terminal" as that term is used in claim 1 of the '832 patent. *Furnace Brook, LLC v. Overstock.com, Inc.*, 230 F. App'x 984, 986 (Fed. Cir. 2007) ("We agree with Furnace Brook insofar as it suggests that a 'telephone terminal' refers to a device for communicating over a telephone network: a cellular telephone and a personal computer are capable of such communication, and to the extent that they are used to do so, either device can constitute a 'telephone terminal.' "). We concluded, however, that the '832 patent required more than just communication over a telephone line. We found that "[i]t requires a dial-up connection to the catalog server at the other end of the connection." *Id.* In light of this requirement, we held that "a personal computer and a cellular telephone . . . must actually be performing that function in order to be 'telephone terminals,' as that term is used in the '832 patent." *Id.* at 987. By "that function," we meant establishing a communication link over a telephone network by dialing the computer system directly. *Id.* Though we both broadened the district court's claim construction *and* added a limitation to it that we found the specification required, we did not remand the *Overstock* case for consideration of Furnace Brook's claims in light of these changes to the standard against which infringement of the '832 patent was to be measured.

Instead, we looked to the record developed in the face of the district court's construction and concluded that it did not contain evidence that Overstock's customers placed a call, from anywhere, when they accessed Overstock's website over the Internet. Accordingly, we held that the district court was correct to grant Overstock's motion for summary judgment with respect to literal infringement. *Id.* Regarding the doctrine of equivalents, we also found that "Furnace Brook has not introduced evidence sufficient to create a genuine issue of material fact as to that question." *Id.* Based on these conclusions, we held that the district court properly granted summary judgment that Overstock did not infringe claim 1 under the doctrine of equivalents. *Id.*

Upon this backdrop, the present litigation arose. As discussed by the majority, the district court held that this court's decision in *Overstock* barred Furnace Brook from relitigating whether a device which accesses a website catalog via a cellular telephone or personal computer meets the "telephone terminal" limitation of claim 1. The majority wrongly endorses that conclusion.

### DISCUSSION

I agree with the majority that the sole issue on appeal is whether Furnace Brook had a full and fair opportunity to litigate whether Overstock's website satisfied the telephone terminal limitation of claim 1. I disagree, however, that Furnace Brook had an opportunity to actually litigate whether: (1) a personal computer met the construction of that limitation adopted by this court; or (2) a cellular telephone is an equivalent of the telephone terminal limitation under either the district court's or this court's construction of the term. I recognize that Furnace Brook concedes that it had the opportunity to actually litigate the construction of telephone terminal and to

litigate whether Overstock's products satisfied that limitation. Furnace Brook's briefs make clear, however, that its concession is only that it had an opportunity to litigate whether a telephone terminal can include a personal computer or cellular telephone — i.e., whether it should not be limited to only a land line. Furnace Brook does not concede that it had the opportunity to litigate whether it was appropriate for this court to read a functional limitation into that term or that it had the opportunity to litigate the question of infringement under this court's unanticipated claim construction. Because Furnace Brook did not waive this argument, its "concessions" do not give us grounds to avoid deciding the issues actually presented in this appeal

As discussed above, the issues on summary judgment before the district court in *Overstock* were extremely narrow. Overstock asserted *only* that its website did not satisfy the telephone terminal limitation, which the district court construed narrowly. As noted, Overstock asserted only that: (1) its website did not literally infringe under the district court's construction; (2) prosecution history estoppel prevented Furnace Brook from asserting that a computer was an equivalent of a telephone terminal under the district court's construction of the term; and (3) cellular telephones could not be considered equivalents because they existed during prosecution and were not mentioned in the patent. Overstock's Mot. Summ. J., No. 05-civ-7329 Doc. 139 at 3, 5–6, 9. Because Furnace Brook did not file its own motion for summary judgment of infringement, it had no incentive to present evidence proving that Overstock's website infringed elements of the asserted claims *other than* the telephone terminal limitation. In light of this procedural posture, Furnace Brook only had incentive to present evidence sufficient to establish that a genuine issue of material fact existed with

respect to the narrow arguments raised in Overstock's motion, none of which addressed the selective communication link "function" on which our decision ultimately turned.

Significantly, the district court separately construed the term selective communication link, i.e., the type of connection between the customer's telephone terminal and the catalogue server. Because Overstock never argued that it did not infringe the patent because its website lacked this limitation, Furnace Brook had no reason to argue or present record evidence that, in opposition to a motion for summary judgment of non-infringement, Overstock's website met this separate and distinct limitation.

Despite the foregoing, on appeal in *Overstock*, this court construed "telephone terminal" to require a specific type of connection between the telephone terminal and the catalogue server. As a result of this construction, we concluded that summary judgment was appropriate because there was no evidence in the record to suggest that a personal computer or a cellular telephone made this type of connection or an equivalent connection. *Overstock*, 230 F. App'x at 987. With respect to literal infringement, we stated "[t]he record contains no evidence that the personal computers or cellular telephones of Overstock's customers place such a call when accessing Overstock's website over the Internet." *Id.* Regarding equivalency, we concluded that Furnace Brook's expert reports were insufficient to establish a genuine issue of material fact because "[Dr. Stevenson] did not explain why accessing a computer server over the Internet is equivalent to dialing a computer server over a telephone network. The deposition testimony of Dr. Richard Nemes suffers from the same flaw." *Id.*

The evidence we found lacking was only relevant, however, because this court changed the construction of telephone terminal to require a function that the district court construed as a separate limitation. Such evidence was relevant to a different limitation, and that limitation was not before the district court because of the limited nature of Overstock's summary judgment motion. In the situation we faced in *Overstock*, we should have reversed the district court's construction of telephone terminal and remanded the case so the parties could present new evidence based on our fundamentally different construction of that term. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008) (holding that, despite the occurrence of a five-day jury trial, a new trial was required "[b]ecause we have adopted a new claim construction on appeal, and this is not a case in which it is clear from the record that the accused device does or does not infringe"); *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (following trial "a change in the claim construction at the appellate level generally necessitates a remand to the district court to consider new factual issues unless the record on appeal supplies substantial evidence to support the jury verdict under the new claim construction."); *cf. Neely v. Martin K. Eby Const. Co.*, 386 U.S. 317, 326 (1967) ("[A]n appellate court may not order judgment n.o.v. . . . where the record reveals a new trial issue which has not been resolved.").

Because we did not remand *Overstock*, we cannot apply collateral estoppel in this case. Furnace Brook never had an opportunity to present evidence of literal infringement under our construction of the telephone terminal limitation, a construction which, for the first time, incorporated a selective communication link function. *See County of Cook*, 773 F.2d at 900 (noting that whether an issue was actually litigated "turns on the determination

[of] whether the issue was properly placed in dispute and was resolved by the trier of fact"); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4419 at 495 (2d ed. 2002) ("It is conceivable that a court may actually decide an issue that has not actually been litigate by the parties. Preclusion can be denied in such circumstances on a variety of grounds . . . it may be found in fact that the issue was not actually litigated."). Because we cut off the record in *Overstock* before it was fully developed on what we found to be the governing issue, we should not now prohibit Furnace Brook from having the opportunity to develop a full record in this case.

We also must not foreclose Furnace Brook's opportunity to pursue its claims under the doctrine of equivalents. In *Overstock*, we noted that "Dr. Stevenson stated that a personal computer and a cellular telephone can perform the same functions as a standard telephone set, and that those devices can also access the Internet." *Overstock*, F. App'x at 987. This very evidence was actually more than Furnace Brook needed to proffer to defeat Overstock's motion for summary judgment because Overstock never argued that personal computers were not equivalents of the telephone terminal limitation. Overstock argued only that prosecution history estoppel barred Furnace Brook from asserting that a personal computer was an equivalent. It did not contend that, assuming these arguments failed, personal computers were not equivalents. And the district court did not rule on that question. Because the issue was never raised before the district court, we cannot say that Furnace Brook had an opportunity to litigate it, whether or not we chose to express a view on it when the case reached us. Collateral estoppel cannot, therefore, apply in these circumstances.

The same is true with respect to the equivalence of cellular telephones. Overstock argued that cellular telephones could not be equivalents because they existed as of the time of the patent application and "foreseeable embodiments that are excluded by the patentee cannot be reclaimed under the doctrine of equivalents." Overstock's Mot. Summ. J., No. 05-civ-7329 Doc. 139 at 9. Though this issue was raised during summary judgment, the district court never addressed the issue, or ruled on the broader question of the equivalence of cellular telephones. Furnace Brook raised this issue on appeal, stating that "the district court never mentioned this issue once in granting summary judgment of no infringement of claim 1 under the doctrine of equivalents." Overstock's Br. 30, No. 2007-1064. But we ignored it.

Rather than discuss the fact that the district court granted summary judgment of non-infringement without even determining whether a cellular telephone was equivalent to a telephone terminal, we affirmed the district court's grant of summary judgment on the grounds that Furnace Brook offered "insufficient evidence" with respect to any claim of equivalence. Again, however, Furnace Brook had no reason to present this evidence because the type of connection between the cellular phone and the website was not relevant under the district court's narrow telephone terminal construction and was not raised by Overstock's equally narrow motion for summary judgment.

For all of these reasons, it is apparent that Furnace Brook was never given the opportunity to present evidence that Overstock's website infringed the '832 patent, either literally or under the doctrine of equivalents, under this court's construction of telephone terminal. Furnace Brook simply has never had the opportunity to litigate, under this court's binding construction of telephone

terminal, whether a website infringes the '832 patent. The majority's claim that Furnace Brook had the opportunity and incentive to litigate this issue ignores what actually occurred in *Overstock*. Accordingly, I respectfully dissent.