O’MALLEY, Circuit Judge,
dissenting.
It is common for this court to change on appeal the claim construction that defines the metes and bounds of the patent claims at issue and ultimately controls infringement determinations in a case. It is also common, thankfully less so, for this court to reassess infringement in light of the new claim construction based only on the record developed under the, now discarded, construction employed by the district court.
This latter practice is sometimes appropriate and, in certain circumstances, works no unfairness to the litigants. For example, a remand is likely unnecessary and inefficient where a careful examination of the record reveals that: (1) it was fully developed with the possibility of this *170 court’s alternative construction in mind; (2) all parties had full incentive to, and no restrictions upon, their ability to develop the factual and legal record on all relevant alternatives; and (3) the trier of fact has had the opportunity to make all relevant and necessary factual findings. In such circumstances, this court can rest assured that the record it faces is the one the parties would have presented had they known what this court’s claim construction would be and that an application of new guiding principles to that record works no unfairness.
Where the record is not so well-developed, however, the failure to remand for further development deprives the parties of the ability to fully and fairly litigate the issues presented. Where, as here, the record was limited by the narrowness of the trial court’s claim construction, and was further narrowed by the summary procedural posture in which the issues were presented and resolved, and where the trial court did not resolve all issues presented to it, this court should remand after revising the governing claim construction. Only by doing so in such circumstances can we be sure that we have not deprived the parties of the right to fully and fairly litigate their disputes.
Because the panel in Furnace Brook, LLC v. Overstock.com, Inc., 230 Fed.Appx. 984 (Fed.Cir.2007) did not remand that action after altering the controlling and critical claim construction, but should have, and because the majority in this case fails to recognize the impact of that earlier failure on the estoppel principles we are to now apply, I must respectfully dissent.[1]
BACKGROUND
The majority does not undertake a careful analysis of the record in Overstock before reaching its conclusion that what occurred there should ban further litigation by Furnace Brook on the '832 patent in this case. Instead, the majority relies on what it characterizes as Furnace Brook’s own concessions to define and delimit the issues it describes as having been litigated in Overstock. By considering Furnace Brook’s concessions out of the context of the record of those earlier proceedings, however, the majority both overstates the scope and import of those concessions and ignores the extent to which the record is inconsistent with the majority’s characterization of it. A careful examination of the prior litigation must be the starting point for any res judicata inquiry, however. See County of Cook v. MidCon Corp., 773 F.2d 892, 900 (7th Cir.1985) (“[T]he central inquiry is whether the same question raised in a subsequent suit was actually litigated and decided in the prior suit, which turns on the determination whether the issue was properly placed in dispute and was resolved by the trier of fact.”).
In the previous litigation, Furnace Brook alleged that Overstock infringed the '832 patent. The district court construed the term “telephone terminal” narrowly, *171 finding it only meant a “standard telephone landline unit, which has a standard commercial handset, a touchtone pad, a display unit and an audio unit, which may have a cordless handset.”[2] Furnace Brook LLC v. Overstock.com, Inc., 2006 WL 3078905 at *1 (S.D.N.Y. Oct. 26, 2006), aff'd, 230 Fed.Appx. 984 (Fed.Cir.2007). The district court held, moreover, that computers and cellular telephones are not telephone terminals. Id.
As a separate limitation, the court also construed the term “selective communication link.” Construing this term, the court stated that “it is evident that the selective communications link is the telephone line connection established between the user’s terminal and the retailer-end computer,” and the term refers “to a dial-up connection through a telephone exchange or a private branch exchange to a telephone network.” Furnace Brook LLC v. Overstock.com, Inc., No. 05-civ-7329, 2006 WL 2792692, at *7 (S.D.N.Y. Sept. 23, 2006) (Markman hearing order).
After claim construction, Overstock moved for summary judgment of non-infringement of claims 1 and 5 of the '832 patent. Overstock, 2006 WL 3078905 at *1. For purposes of the present appeal, Overstock’s arguments with respect to claim 5 are not relevant. With respect to claim 1, Overstock asserted that (1) its website did not literally infringe under the district court’s construction because it did not employ a “standard telephone landline unit”; (2) prosecution history estoppel prevented Furnace Brook from asserting that a computer was an equivalent of “standard landline unit”; and (3) cellular telephones could not be considered equivalents of “standard landline units” because they existed at the time the patent was drafted and were not mentioned in the patent. Overstock’s Mot. Summ. J., No. 05-civ-7329 Doc. 139 at 3, 5-6, 9.
In response to this motion, Furnace Brook conceded that the district court’s construction of telephone terminal prevented it from proving literal infringement. Overstock, 2006 WL 3078905 at *6. Furnace Brook argued, however, that prosecution history did not bar it from establishing infringement under the doctrine of equivalents. Id. Specifically, Furnace Brook argued that it was not barred from asserting that both cellular telephones and dial-up computer connections were equivalents of the land line described in the district court’s construction. Furnace Brook’s Op. Mot. Summ. J., No. 05-civ-7329 Doc. 149 at 8-12. Despite Furnace Brook’s arguments, the district court held that “prosecution history prevents Furnace Brook from arguing that a computer is encompassed under telephone terminal under the doctrine of equivalents.” Overstock, 2006 WL 3078905 at *9. While the district court did not even address the equivalence of cellular telephones, it still granted Overstock’s motion for summary judgment in its entirety with respect to claim 1. Overstock, 2006 WL 3078905 at *3.
On appeal, we agreed with Furnace Brook that the district court’s claim construction was too narrow and that a personal computer or cellular telephone could be a “telephone terminal” as that term is used in claim 1 of the '832 patent. Furnace Brook, LLC v. Overstock.com, Inc., 230 Fed.Appx. 984, 986 (Fed.Cir.2007) (‘We agree with Furnace Brook insofar as it suggests that a ‘telephone terminal’ refers to a device for communicating over a telephone network: a cellular telephone *172 and a personal computer are capable of such communication, and to the extent that they are used to do so, either device can constitute a ‘telephone terminal.’ ”). We concluded, however, that the '882 patent required more than just communication over a telephone line. We found that “[i]t requires a dial-up connection to the catalog server at the other end of the connection.” Id. In light of this requirement, we held that “a personal computer and a cellular telephone ... must actually be performing that function in order to be ‘telephone terminals,’ as that term is used in the '882 patent.” Id. at 987. By “that function,” we meant establishing a communication link over a telephone network by dialing the computer system directly. Id. Though we both broadened the district court’s claim construction and added a limitation to it that we found the specification required, we did not remand the Overstock case for consideration of Furnace Brook’s claims in light of these changes to the standard against which infringement of the '832 patent was to be measured.
Instead, we looked to the record developed in the face of the district court’s construction and concluded that it did not contain evidence that Overstock’s customers placed a call, from anywhere, when they accessed Overstock’s website over the Internet. Accordingly, we held that the district court was correct to grant Overstock’s motion for summary judgment with respect to literal infringement. Id. Regarding the doctrine of equivalents, we also found that “Furnace Brook has not introduced evidence sufficient to create a genuine issue of material fact as to that question.” Id. Based on these conclusions, we held that the district court properly granted summary judgment that Overstock did not infringe claim 1 under the doctrine of equivalents. Id.
Upon this backdrop, the present litigation arose. As discussed by the majority, the district court held that this court’s decision in Overstock barred Furnace Brook from relitigating whether a device which accesses a website catalog via a cellular telephone or personal computer meets the “telephone terminal” limitation of claim 1. The majority wrongly endorses that conclusion.
DISCUSSION
I agree with the majority that the sole issue on appeal is whether Furnace Brook had a full and fair opportunity to litigate whether Overstock’s website satisfied the telephone terminal limitation of claim 1. I disagree, however, that Furnace Brook had an opportunity to actually litigate whether: (1) a personal computer met the construction of that limitation adopted by this court; or (2) a cellular telephone is an equivalent of the telephone terminal limitation under either the district court’s or this court’s construction of the term. I recognize that Furnace Brook concedes that it had the opportunity to actually litigate the construction of telephone terminal and to litigate whether Overstock’s products satisfied that limitation. Furnace Brook’s briefs make clear, however, that its concession is only that it had an opportunity to litigate whether a telephone terminal can include a personal computer or cellular telephone — i.e., whether it should not be limited to only a land line. Furnace Brook does not concede that it had the opportunity to litigate whether it was appropriate for this court to read a functional limitation into that term or that it had the opportunity to litigate the question of infringement under this court’s unanticipated claim construction. Because Furnace Brook did not waive this argument, its “concessions” do not give us grounds to avoid deciding the issues actually presented in this appeal.
*173 As discussed above, the issues on summary judgment before the district court in Overstock were extremely narrow. Overstock asserted only that its website did not satisfy the telephone terminal limitation, which the district court construed narrowly. As noted, Overstock asserted only that: (1) its website did not literally infringe under the district court’s construction; (2) prosecution history estoppel prevented Furnace Brook from asserting that a computer was an equivalent of a telephone terminal under the district court’s construction of the term; and (3) cellular telephones could not be considered equivalents because they existed during prosecution and were not mentioned in the patent. Overstock’s Mot. Summ. J., No. 05-civ-7329 Doc. 139 at 3, 5-6, 9. Because Furnace Brook did not file its own motion for summary judgment of infringement, it had no incentive to present evidence proving that Overstock’s website infringed elements of the asserted claims other than the telephone terminal limitation. In light of this procedural posture, Furnace Brook only had incentive to present evidence sufficient to establish that a genuine issue of material fact existed with respect to the narrow arguments raised in Overstock’s motion, none of which addressed the selective communication link “function” on which our decision ultimately turned.
Significantly, the district court separately construed the term selective communication link, i.e., the type of connection between the customer’s telephone terminal and the catalogue server. Because Overstock never argued that it did not infringe the patent because its website lacked this limitation, Furnace Brook had no reason to argue or present record evidence that, in opposition to a motion for summary judgment of noninfringement, Overstock’s website met this separate and distinct limitation.
Despite the foregoing, on appeal in Overstock, this court construed “telephone terminal” to require a specific type of connection between the telephone terminal and the catalogue server. As a result of this construction, we concluded that summary judgment was appropriate because there was no evidence in the record to suggest that a personal computer or a cellular telephone made this type of connection or an equivalent connection. Overstock, 230 Fed.Appx. at 987. With respect to literal infringement, we stated “[t]he record contains no evidence that the personal computers or cellular telephones of Overstock’s customers place such a call when accessing Overstock’s website over the Internet.” Id. Regarding equivalency, we concluded that Furnace Brook’s expert reports were insufficient to establish a genuine issue of material fact because “[Dr. Stevenson] did not explain why accessing a computer server over the Internet is equivalent to dialing a computer server over a telephone network. The deposition testimony of Dr. Richard Nemes suffers from the same flaw.” Id.
The evidence we found lacking was only relevant, however, because this court changed the construction of telephone terminal to require a function that the district court construed as a separate limitation. Such evidence was relevant to a different limitation, and that limitation was not before the district court because of the limited nature of Overstock’s summary judgment motion. In the situation we faced in Overstock, we should have reversed the district court’s construction of telephone terminal and remanded the case so the parties could present new evidence based on our fundamentally different construction of that term. See Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1324 (Fed.Cir.2008) (holding that, despite the occurrence of a five-day jury trial, a new trial was required “[b]ecause we have adopted a *174 new claim construction on appeal, and this is not a case in which it is clear from the record that the accused device does or does not infringe”); Bowers v. Baystate Techs., Inc., 320 F.3d 1317, 1334 (Fed.Cir.2003) (following trial “a change in the claim construction at the appellate level generally necessitates a remand to the district court to consider new factual issues unless the record on appeal supplies substantial evidence to support the jury verdict under the new claim construction.”); cf. Neely v. Martin K. Eby Const. Co., 386 U.S. 317, 326, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967) (“[A]n appellate court may not order judgment n.o.v .... where the record reveals a new trial issue which has not been resolved.”).
Because we did not remand Overstock, we cannot apply collateral estoppel in this case. Furnace Brook never had an opportunity to present evidence of literal infringement under our construction of the telephone terminal limitation, a construction which, for the first time, incorporated a selective communication link function. See County of Cook, 773 F.2d at 900 (noting that whether an issue was actually litigated “turns on the determination [of] whether the issue was properly placed in dispute and was resolved by the trier of fact”); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4419 at 495 (2d ed. 2002) (“It is conceivable that a court may actually decide an issue that has not actually been litigate by the parties. Preclusion can be denied in such circumstances on a variety of grounds ... it may be found in fact that the issue was not actually litigated.”). Because we cut off the record in Overstock before it was fully developed on what we found to be the governing issue, we should not now prohibit Furnace Brook from having the opportunity to develop a full record in this case.
We also must not foreclose Furnace Brook’s opportunity to pursue its claims under the doctrine of equivalents. In Overstock, we noted that “Dr. Stevenson stated that a personal computer and a cellular telephone can perform the same functions as a standard telephone set, and that those devices can also access the Internet.” Overstock, Fed.Appx. at 987. This very evidence was actually more than Furnace Brook needed to proffer to defeat Overstock’s motion for summary judgment because Overstock never argued that personal computers were not equivalents of the telephone terminal limitation. Overstock argued only that prosecution history estop-pel barred Furnace Brook from asserting that a personal computer was an equivalent. It did not contend that, assuming these arguments failed, personal computers were not equivalents. And the district court did not rule on that question. Because the issue was never raised before the district court, we cannot say that Furnace Brook had an opportunity to litigate it, whether or not we chose to express a view on it when the case reached us. Collateral estoppel cannot, therefore, apply in these circumstances.
The same is true with respect to the equivalence of cellular telephones. Overstock argued that cellular telephones could not be equivalents because they existed as of the time of the patent application and “foreseeable embodiments that are excluded by the patentee cannot be reclaimed under the doctrine of equivalents.” Overstock’s Mot. Summ. J., No. 05-civ-7329 Doc. 139 at 9. Though this issue was raised during summary judgment, the district court never addressed the issue, or ruled on the broader question of the equivalence of cellular telephones. Furnace Brook raised this issue on appeal, stating that “the district court never mentioned this issue once in granting summary judgment of no infringement of claim 1 under the *175 doctrine of equivalents.” Overstock’s Br. 30, No. 2007-1064. But we ignored it.
Rather than discuss the fact that the district court granted summary judgment of non-infringement without even determining whether a cellular telephone was equivalent to a telephone terminal, we affirmed the district court’s grant of summary judgment on the grounds that Furnace Brook offered “insufficient evidence” with respect to any claim of equivalence. Again, however, Furnace Brook had no reason to present this evidence because the type of connection between the cellular phone and the website was not relevant under the district court’s narrow telephone terminal construction and was not raised by Overstock’s equally narrow motion for summary judgment.
For all of these reasons, it is apparent that Furnace Brook was never given the opportunity to present evidence that Overstock’s website infringed the '832 patent, either literally or under the doctrine of equivalents, under this court’s construction of telephone terminal. Furnace Brook simply has never had the opportunity to litigate, under this court’s binding construction of telephone terminal, whether a website infringes the '832 patent. The majority’s claim that Furnace Brook had the opportunity and incentive to litigate this issue ignores what actually occurred in Overstock. Accordingly, I respectfully dissent.

. The majority discounts the concerns expressed here by characterizing them as a refusal to be bound by prior panel opinions. Maj. Op. at 168-69. That response fundamentally misunderstands both the point of this dissent and the important doctrine of collateral estoppel we are to apply here. I do not seek to revisit or revise what we did in Overstock. I simply suggest that we recognize the reality of what occurred and acknowledge that, given the record in that case — both at the trial level and on appeal — Furnace Brook was deprived of a full and fair opportunity to actually litigate the issues it seeks to litigate in this case. Furnace Brook does not ask that we alter the claim construction we adopted in Overstock; it only asks for the opportunity to litigate — for the first time — the question of infringement in the face of that construction.

. As the majority notes, the term telephone terminal is present in claim 1 and dependent claims 2-4 in the '832 patent.